**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

November 16, 2012

Brain D. Bennett, Esq.
Terziu & Bennett
2211 Eastern Blvd.
Baltimore, MD 21220

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD 21201

**Re: Thelma May LaPlante v. Michael J. Astrue, Commissioner of Social Security, PWG-10-3409**

Dear Counsel:

Pending, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. LaPlante's claim for Disability Insurance Benefits ("DIB"). (ECF Nos. 8, 13, 21). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion, and GRANTS the Plaintiff's Alternative Motion for Remand.

Thelma May LaPlante (sometimes referred to as "Claimant" or "Ms. LaPlante") applied for DIB on December 27, 2007, alleging that she was disabled due to diabetes mellitus, congestive heart disease, neuropathy, obesity, torn ligaments, a torn rotator cuff, pain in her shoulders, arthritis, muscle cramps, asthma, anxiety, bipolar disorder, a panic disorder with agoraphobia, and a personality disorder. (Tr. 13, 150). Her claim was denied initially, and upon reconsideration. (Tr. 80-90). After a hearing on February 25, 2010, before Administrative Law Judge, William K. Underwood ("ALJ") Ms. LaPlante's claim was denied in a decision dated April 27, 2010. The ALJ concluded that Ms. LaPlante's degenerative joint disease of the knee, her status

post arhtroplasty of the right knee, her status post shoulder injury and repair, osteoarthritis and allied disorders diabetes mellitus, asthma obesity degenerative disc disease, congestive heart disease, panic disease without agoraphobia, anxiety disorder, bipolar disorder, depressed and personality disorder all were “severe” impairments, as defined in the Regulations, but they did not meet, or medically equal, any of the Listed Impairments. (Tr. 13). The ALJ also found that Ms. LaPlante retained the residual functional capacity (“RFC”) to perform a range of sedentary work. (Tr. 28). Based on her RFC, the ALJ found that Claimant could not perform any of her past relevant work (“PRW”). After receiving testimony from a vocational expert (“VE”), the ALJ concluded that work existed in the national and local economies in significant numbers which Ms. LaPlante could perform. Accordingly, the ALJ found that she was not disabled. (Tr. 11-34). On November 23, 2010, the Appeals Council denied Ms. LaPlante’s request for review, making her case ready for judicial review. (Tr. 1-4).

Claimant argues that the ALJ erred in determining whether she met a Listing, in determining her RFC, and in finding that there was work she could perform. As explained below, I conclude that the ALJ’s decision is not supported by substantial evidence, and therefore DENY the Commissioner’s Motion and GRANT the Plaintiff’s Alternative Motion for Remand.

The Court finds that the ALJ erred at steps three, four and five of the sequential evaluation in evaluating whether Ms. LaPlante’s impairments met a Listing, in evaluating her mental RFC, and in presenting hypotheticals to the VE.

The ALJ has a clear duty fully to explain his or her step three analysis. *See Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986); Schoofield v. Barnhart,* 220 F.Supp. 2d 512 (D. Md. 2002); *France v. Apfel*, 87 F. Supp. 2d 484 (D. Md. 2000); and *Ketcher v. Apfel,* 68 F. Supp. 2d 629 (D. Md. 1999). While the ALJ discussed some of the medical evidence in his summary of the evidence, he did not sufficiently explain his reasoning for his determinations at step three of the sequential analysis with respect to Ms. LaPlante’s physical impairments. (Tr. 27). For example, nowhere in his decision did the ALJ state what the requirements of the relevant listing(s) were, or even which subsection(s) he considered. (Tr. Id.). The ALJ stated only:

> “The undersigned has carefully considered the evidence of record and testimony at the hearing and has

determined no mental disorder, musculoskeletal, cardiovascular, or endocrine system listings are met.”
(Tr. 27).

The ALJ’s explanation is simply not adequate. For example, in their respective Memoranda, counsel identify Listings 1.02, 1.03 and 3.03 as applicable. In his decision the ALJ did not so much as state whether he reviewed the requirements of Listing 1.00. (Tr. 27). There are at least 8 subcategories under Listing 1.00 but the ALJ does not state which sections were considered. In his Memorandum, the Commissioner devotes nearly seven pages to citing evidence in the record that supports his argument that the ALJ properly found Claimant did not meet or equal any listing including Listings 1.02, 1.03 and 3.03. However, this is not the ALJ’s analysis, it is the Commissioner’s after the fact rationalization of it. The limited nature of this Court’s review is to examine the stated reasoning of the ALJ to see whether it is supported by substantial evidence–-not to speculate whether the selection by the Commissioner in his brief of facts that support the result reached by the ALJ from a record which also included facts that did not support that result was what the ALJ relied on. As acknowledged by the Commissioner in his Memorandum, there is evidence that the Claimant may meet at least some requirements of 1.02. See Defendant’s Memorandum, pp. 30. (Tr. 227). While the reasons suggested by the Commissioner may well be valid bases for a finding that Claimant does not meet 1.02 and/or 1.03, and 3.03, the reasons now proffered, were not cited, or even discussed, by the ALJ in his decision. (Tr. 27). Failure by an ALJ to explain a decision makes it impossible to tell what facts the ALJ considered, accepted as credible, and rejected as unpersuasive.

In short, the role of the Court is to evaluate the decision of the ALJ and its supporting facts. It is not the function of this Court to engage in speculation. The ALJ should have stated which listings were considered so that this Court could review for substantial evidence. Under these circumstances the ALJ should have cited the specific listing(s) and done a more detailed analysis of the medical evidence that related to them. *See Ketcher v. Apfel*, 68 F.Supp. 2d 629, 646 (D. Md. 1999). The ALJ is in a much better position to evaluate the evidence and more importantly, has the duty, to make clear and identify what evidence she is relying upon. Without such explanation it is simply impossible to tell whether there was substantial evidence to support the determination. *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). On remand this must be done.

Claimant also argues the ALJ also failed to discuss whether he considered properly all of the evidence in determining Claimant's RFC. I agree. The ALJ found Ms. LaPlante's RFC was as follows:

> [T]he Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)… She is not able to climb ladders ropes or scaffolding or kneel. She as the residual functional capacity to occasionally climb ramps or stairs, balance, stoop, crouch or crawl. She must avoid concentrated exposure to environmental irritants. She must avoid moving machinery and unprotected heights. The claimant is able to perform unskilled work with short simple instructions repetitive in nature. She is able to have occasional interaction with others. Her jobs must require general goals versus production-rate goals.
> (Tr. 28).

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §404.1520a.[1] (Tr. 23). However the ALJ's discussion of Ms. LaPlante's mental limitations at steps two and three was not an RFC assessment[2], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and

---

[1]The ALJ found that Ms. LaPlante had the following limitations: "mildly" limited in activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and she experienced "one or two" episodes of decompensation. (Tr. 28).

[2] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment." *See* 20 CFR Pt. 404, Subpt.P, App. 1; *See also* SSR 96-8p (1996 WL 374184).

> 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.
> SSR 96-8p (1996 WL 374184, *4(S.S.A.)).

The ALJ referenced the language above in his decision yet failed to comply with it. The ALJ's RFC analysis did not include any of the required detailed findings. Rather, the ALJ stated, in a conclusory fashion, that Ms. LaPlante could perform "unskilled work with short simple instructions, repetitive in nature, with occasional interaction with others and her jobs require general goals versus production rate goals." (Tr. 28). This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart,* 121 Fed. Appx. 833 (10th Cir. 2005)(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required). The primary deficiency in this case is the ALJ's failure to explain whether, and/or why, he was discrediting the VE's testimony in response to questions that included the detailed assessment of "moderate" mental limitations in seven different areas. (Tr. 75-77). Equally important is the ALJ's failure to reference or discuss the Mental Residual Functional Capacity Assessment completed by the state agency physician, R. Hilton, in his decision. *See* Exhibit 18-F (Tr. 487-489).

On March 11, 2009, R. Hilton reviewed Ms. LaPlante's records and stated that she was "moderately" limited in her abilities to:

> 1) understand and remember detailed instructions;
> 2) carry out detailed instructions;
> 3) maintain attention and concentration for extended periods;
> 4) work in coordination with or proximity to others without being distracted by them;
> 5) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
> 6) interact appropriately with the general public; and
> 7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

See Exhibit 18-F (Tr. 487-489).

The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.)). Since this evidence was not discussed by the ALJ-–and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p[3]--the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ’s finding regarding Ms. LaPlante’s RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)). The limitations R. Hilton attributed to Ms. LaPlante are clearly relevant to unskilled work, but this evidence was not discussed by the ALJ in his decision, and more importantly, when these limitations were included in the hypotheticals presented to the VE, the VE stated no work existed for such an individual with the limitations referred to in Exhibit 18-F.(Tr. 75-76, 487-489).

This error is not *de minimis.* When a Claimant is limited to less than a full range of sedentary work–-as is the case here–-serious implications to the vocational base may arise when mental limitations or restrictions exist. *See* SSR 96-9p (An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual’s medical impairments and is expected to be relatively rare).[4] Since the

---

[3] SSR 96-8p, in relevant part, states: Initial failure to consider an individual’s ability to perform the specific work-related functions could be critical to the outcome of a case. (1996 WL 374184, *3 (S.S.A.))

[4] Mental limitations or restrictions: A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work: * Understanding, remembering, and carrying out simple instructions. * Making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions. * Responding appropriately to supervision, co-

ALJ does not discuss whether or how he considered these additional limitations found in R. Hilton's report, I am not able to say that his findings at steps four and five are supported by substantial evidence.

Finally, subsequent to filing her motion for Summary Judgment, Ms. LaPlante filed a Motion to Supplement the Record. (ECF No. 14). Defendant timely filed a response in opposition to the Motion to Supplement (ECF No. 15). Ms. LaPlante would like the court to consider correspondence stating that she was diagnosed with left breast cancer on March 28, 2011. This evidence was never previously submitted to the Commissioner. Defendant objects to her request to supplement the record on the basis that this information was not new, material, and there was not good cause for failure to produce the evidence previously. The Court cannot consider evidence that was not before the Commissioner. *See Smith v. Chater*, 99 F.3d 635, 638, n.5 (4th Cir. 1996). A reviewing Court can remand a case to the Commissioner but only if the Claimant establishes that the evidence is new, material, and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991); 42 U.S.C. §405(g). Claimant has not presented any facts or argument regarding these factors in Claimant's correspondence, she did not file any response to Defendant's response Motion, and the time to do so has passed. The Court can not consider this evidence. Accordingly Claimant's Motion to supplement the record (ECF No. 14) is DENIED.

For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum. A separate Order shall issue.

Dated: 11/16/12

_____________/s/______________
Paul W. Grimm
United States Magistrate Judge

---

workers and usual work situations.* Dealing with changes in a routine work setting.). (1996 WL 374185 (S.S.A.))